## Wujnovich, Appellant *v.* Wujnovich.

Argued April 12, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*James E. Marshall,* with him *Dale T. Lias, Harry A. Miller, Marshall & Marshall* and *Miller & Miller,* for appellant.

*Luther C. Braham,* with him *William F. Beatty* and *Galbreath, Braham & Gregg,* for appellee.

OPINION BY RHODES, P. J., November 15, 1950:

In this divorce action the master recommended that a divorce be granted to the libellant husband on the ground of indignities, and, by supplemental report, on the ground of desertion. The libel was filed on July 22, 1946,[1] in which the ground for divorce was alleged indignities. The master filed his original report on March 9, 1947, to which report the respondent wife filed exceptions. On January 3, 1949, after argument upon the exceptions and before the court below took any action, libellant amended his libel to include desertion. The matter was thereafter referred to the master for further hearing. Subsequently the master filed his supplemental report. On September 29, 1949, the court below filed two opinions, one having reference to the alleged indignities and the other to desertion. The court below refused to accept the recommendations of the master and dismissed the libel. Libellant has appealed to this Court.

The parties were married on April 26, 1941. Both had been previously married and divorced. Following their marriage they resided in respondent's home at 904 North Canal Street, Pittsburgh, Pennsylvania. Respondent sold her home and purchased another at 853 South Canal Street in the same city, where they resided until December, 1944.

Libellant was employed as a laborer at the time of their marriage, and for some time thereafter, by the Crucible Steel Company. On December 11, 1942, he sustained an injury while at work, which resulted in the loss of his right hand, and which necessitated the removal of a piece of his skull bone. Thereafter he received compensation in the amount of $18 per week until disposition of an action brought for damages for

---

[1] Pennsylvania Rules of Civil Procedure (Nos. 1121-1136) were not effective until June 1, 1948.

his injuries. There was a verdict in his favor on November 17, 1943, in the amount of $38,000. After attorney fees, advancements, and other expenses were paid the net amount received by libellant on November 13, 1944, was slightly less than $20,000. This sum was deposited in a bank in a joint account against which either libellant or respondent could draw, and partially invested in a mortgage held jointly.

In December, 1944, the parties went to Florida where they apparently intended to purchase some real estate. Respondent became dissatisfied with the proposed purchase involving $7,000 and she returned alone to Pittsburgh. On her arrival she transferred the joint bank account to an account in her individual name. Her stated purpose in so doing was to prevent clearance of a $1,000 check which libellant had given on the purchase price and to prevent him from further wasting his money. Libellant returned to Pittsburgh by train a few days later. For some time they lived apart, libellant being dependent on his friends.

On January 29, 1945, respondent filed a petition in the Court of Common Pleas of Allegheny County to have libellant declared a weakminded person and for the appointment of a guardian. Libellant filed a bill in equity against respondent seeking to restrain her from using any of the money which she had transferred to her own name. The parties entered into an agreement on March 29, 1945, pursuant to the terms of which the money held by her was placed in a joint account requiring for withdrawals the signatures of both parties. The title to respondent's real estate was likewise placed in both names. Title to her automobile was not transferred in accordance with the agreement. The attorney fees, witness fees, and other costs of such litigation amounted to about $1,300 and were paid out of the joint account.

On or about May 27, 1945, the parties bought a farm in Butler County for which they paid $6,000. An additional $1,200 was expended for livestock, machinery, and equipment. They resided together on the farm until January 7, 1946, when libellant, as he testified, was forced to leave because of repeated threats of respondent and a son by a former marriage. Prior thereto respondent and her son assaulted libellant. About three weeks after libellant left the farm respondent sold the livestock, machinery, and furniture in and about the farm. On January 27, 1946, respondent left the farm and returned to Pittsburgh to reside with her son. She assigns as the reason for her action in disposing of the personal property that she had no money with which to buy feed for the livestock or to support herself. When libellant returned with protective assistance he found that respondent had left; he remained upon the premises. With no available funds he had to obtain assistance from others.

Both libellant and respondent are of foreign extraction; libellant's education is limited. The master, in an exhaustive report, concluded that libellant was entitled to a divorce on both grounds—indignities and desertion. The court below concluded otherwise. From our independent examination of the record we are of the opinion that libellant is entitled to a decree of divorce on the ground of indignities. In view of our conclusion in this respect, it is not necessary for us to pass upon the procedural or substantive question of respondent's alleged desertion. A number of witnesses testified in favor of libellant as to the conduct of respondent, and in some respects they are corroborative of libellant's contentions. We are aware that there are some contradictions in libellant's testimony and some inconsistencies. The determining factor, as we view it, is respondent's inexcusable conduct following libel-

lant's accident and the receipt by him of $20,000 in damages in 1944. Respondent appeared determined to obtain or control this fund. Disinterested witnesses testified that upon her return from Florida in January, 1945, and after the transfer of the bank account of $11,500 to her name, she stated: "I got the money, he can go ————. The hell with him, the hell with the whole world." Seven thousand dollars had been invested in a mortgage which was in the names of libellant and respondent. The interest checks were made out in both names. It appears that libellant was threatened with bodily harm by respondent and her son to force him to sign or endorse checks. There is credible testimony that respondent inflicted physical injury upon libellant when he hesitated to carry out her demands. This conduct on the part of respondent occurred both before and after they moved to the farm. Respondent was the superior physically and mentally. She habitually used disgustingly vulgar language, and she treated libellant contemptuously. Notwithstanding libellant's serious injuries, respondent displayed the utmost unconcern about his physical welfare from the time they returned from Florida until libellant was obliged to leave in January, 1946. We think respondent, by a course of conduct consisting of threats, the infliction of physical injury, intentional neglect and abuse, was guilty of indignities to libellant's person, and that a decree of divorce should be granted on that ground. It is unnecessary to relate in detail her conduct which plainly manifested a settled hate toward libellant. The conduct of both parties may be subject to criticism, but her continued treatment of libellant cannot be justified on the ground that it was provoked by libellant's own conduct. Respondent had libellant arrested at least five times on various unfounded charges. These arrests were apparently to serve her own purposes or ultimate objectives.

Decree of the court below is reversed, the libel is reinstated, and the record is remitted to the court below with direction to enter a decree of absolute divorce on the ground of indignities to the person of libellant.